COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Annunziata
Argued at Richmond, Virginia


DARRICK HAMILTON HOOD

MEMORANDUM OPINION[*] BY
v.  Record No. 0821-94-2           JUDGE JAMES W. BENTON, JR.
                                       OCTOBER 10, 1995
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Thomas N. Nance, Judge

        C. David Whaley (Anthony G. Spencer; Morchower,
        Luxton & Whaley, on briefs), for appellant.

        Thomas C. Daniel, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


        Darrick Hamilton Hood appeals from his conviction of

possessing a firearm after having been convicted of a felony.

Code § 18.2-308.2.  He contends the firearms were seized in

violation of the Fourth Amendment.  For the reasons that follow,

we reverse the conviction.

                            I.

        The evidence proved that on the evening of October 10, 1993,

Hood went to a hospital to be treated for a gunshot wound to his

right arm.  Police Officers J. Morgan Brown, Jr., and Clyde

Fisher went to the hospital and spoke with Hood as a victim of a

shooting.  After learning that somebody fired bullets at Hood's

car, the officers went to look at the car.  They observed bullet

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

holes in the car and shell casings on a seat inside the car.

The officers returned to the hospital and again questioned Hood about being a shooting victim. The officers asked Hood whether he had been armed and had returned fire. Hood responded that he had backed into a parking lot and that somebody approached his car and shot at him. He said that he quickly drove away and did not shoot at the assailant. Hood also stated that he had guns in the trunk of his car that had not been fired. The officers asked Hood if he would go to his car with them and open the trunk. Hood agreed to do so.

Hood went outside without a shirt. When he opened the trunk of his car, the officers could not see the guns and asked Hood to remove them. Hood placed two guns on top of a speaker box in the trunk. Hood then asked for his coat and reached into the trunk for a jacket to wear. Officer Brown grabbed the jacket from Hood and patted it for weapons. When Officer Brown squeezed the jacket, he felt an object about three inches long and an inch thick. Although he knew the object was not a weapon, he suspected that it may have been drugs. Officer Brown removed the object, a folded brown paper bag, and opened it. He saw what appeared to be several rocks of crack cocaine. The officers seized the cocaine and the guns and arrested Hood on drug related offenses. When Hood was being processed at the police station, the officers learned that he was a convicted felon and charged him with the weapons offense.

Hood was indicted for possession of cocaine with intent to distribute, possession of cocaine while possessing a firearm, and possession of a firearm after having been convicted of a felony. Before trial, the judge ruled that the search of the jacket was unlawful and suppressed evidence of the cocaine. However, the judge denied Hood's motion to suppress evidence of the firearms seized from the trunk. At trial, Hood was convicted of possessing firearms after having been convicted of a felony.

                                II.

The trial judge's finding that the search of Hood's jacket was unlawful necessarily "also prohibit[s] the introduction of derivative evidence 'that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search.'" Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 687 (1974)(quoting Murray v. United States, 487 U.S. 533, 536-37 (1988)). The principle is well established that evidence derived from an illegal search or seizure may not provide the basis for a subsequent seizure. Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). Accordingly, the seizure of the guns cannot rest upon Hood's arrest for possession of the unlawfully seized cocaine.

Although the officers were not acting under authority of a warrant, the Commonwealth contends the officers could have properly seized the guns prior to discovering the cocaine. The Commonwealth asserts the seizure was permissible as a plain view

exception to the Fourth Amendment or as a consensual seizure. Thus, we begin our analysis with the principle that "searches [and seizures] conducted outside the judicial process, without prior approval of a judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

To invoke the plain view exception to the Fourth Amendment, see Coolidge v. New Hampshire, 403 U.S. 443, 464 (1970), the Commonwealth was required to prove that the police "'had probable cause to believe the evidence seized was a seizable item, i.e. contraband, the fruit or tools of a crime, or other evidence of a crime.'" Commonwealth v. Grimstead, 12 Va. App. 1066, 1068, 407 S.E.2d 47, 48 (1991)(citation omitted). The evidence proved that when the officers questioned Hood while he waited for medical attention they did not suspect him of criminal activity. Indeed, they testified that they were questioning him in the belief that he was a victim of a crime. During their questioning, Hood told them of the guns in his trunk and voluntarily opened his trunk at the officers' request.

Hood had earlier informed the officers that the assailant approached and shot into the car. The bullets holes in the body of the car observed by the officers were not inconsistent with Hood's report. There is no evidence that the officers believed the shell casings in the car were from the guns in the trunk. At

- 4 -

best, the officers' observations generated unanswered questions requiring further investigation.  However, a vague need for inquiry does not rise to the level of probable cause to believe the weapons in the trunk were involved in criminal activity.

"Probable cause . . . must be based on more than speculation, suspicion, or surmise that a crime might be in progress."  Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995).  The criminality of the guns in the trunk was not immediately apparent to the officers.  See Coolidge, 403 U.S. at 466.  Thus, the evidence adduced at the hearing does not support the conclusion that the officers had probable cause to believe the guns were the tools of a crime.  See Grimstead, 12 Va. App. at 1068, 407 S.E.2d at 48.

Although Hood voluntarily removed the guns from his trunk, the evidence does not prove that the seizure was consensual.  Hood only consented to opening his trunk and allowing the officers to view his guns.  The Fourth Amendment's prohibition against unreasonable seizures requires the Commonwealth to prove that Hood freely and voluntarily consented to the seizure.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968); Hairston v. Commonwealth, 216 Va. 387, 388, 218 S.E.2d 668, 669 (1975).  The officers seized the weapons only after finding the cocaine.  The evidence does not prove that Hood consented to the seizure.

For these reasons, we hold that the trial judge erred in ruling that the seizure of the guns did not violate the Fourth

Amendment and in failing to also suppress the guns.  We, therefore, reverse the conviction and remand the case to the circuit court.

Reversed and remanded.