COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Millette
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 2594-07-2                JUDGE LARRY G. ELDER
                                                     MARCH 11, 2008
DAVID KURNARD HACKETT


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
J. Peyton Farmer, Judge Designate

        Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on briefs), for appellant.

        Patricia Kelly (Woodbridge, Ventura & Kelly, P.C., on brief), for
        appellee.


        David Kurnard Hackett (defendant) stands indicted for possession of a controlled

substance with intent to distribute.  Pursuant to Code § 19.2-398, the Commonwealth appeals a

pretrial ruling granting defendant's motion to suppress the evidence upon which he was indicted

for possessing a controlled substance, which police obtained after viewing what they believed

was an illegal drug transaction that occurred on defendant's property.  This appeal raises two

issues:  the first, raised *sua sponte* by this Court, is whether the Commonwealth's failure to

comply with the certification requirement of Code § 19.2-400 represented a jurisdictional defect

requiring dismissal of the appeal; and the second, raised by the Commonwealth, concerns

whether the trial court's ruling suppressing the evidence was erroneous.  We hold the failure to

make the certification required by the statute is not a jurisdictional defect and that the trial

court's ruling suppressing the evidence was not error.  Thus, we affirm the granting of the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

motion and remand for additional proceedings consistent with this opinion if the Commonwealth be so advised.

I.

A.

STATUTORY CERTIFICATION REQUIREMENT
FOR AN APPEAL BY THE COMMONWEALTH

Two different statutory provisions reference the requirement of a certification by the Commonwealth in the context of pre-trial appeals.  Code § 19.2-398 provides:

> A.  In a felony case a pretrial appeal from a circuit court may be taken by the Commonwealth from:
>
>    \*     \*     \*     \*     \*     \*     \*
>
> 2.  An order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Section 8, 10 or 11 of the Constitution of Virginia prohibiting illegal searches and seizures and protecting rights against self-incrimination, *provided the Commonwealth certifies that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding*.

(Emphasis added).  Code § 19.2-400 contains similar certification language, providing:

> No appeal shall be allowed the Commonwealth pursuant to subsection A of § 19.2-398 unless within seven days after entry of the order of the circuit court from which the appeal is taken, and before a jury is impaneled and sworn if there is to be trial by jury or, in cases to be tried without a jury, before the court begins to hear or receive evidence or the first witness is sworn, whichever occurs first, the Commonwealth files a notice of appeal with the clerk of the trial court.  *If the appeal relates to suppressed evidence, the attorney for the Commonwealth shall certify in the notice of appeal that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material*

*to the proceeding*. All other requirements related to the notice of appeal shall be governed by Part Five A of the Rules of the Supreme Court.

(Emphasis added).

We have previously held that, because Code § 19.2-398 "'is in derogation of the general constitutional prohibition against appeals by the Commonwealth[,] . . . [i]t "must be strictly construed against the state and limited in application to cases clearly falling within the language of the statute."'" Commonwealth v. Thomas, 23 Va. App. 598, 607, 478 S.E.2d 715, 719 (1996) (quoting Commonwealth v. Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990) (citations omitted)). Nevertheless, we have concluded Code § 19.2-398 does not permit us to review for accuracy the certification required therein and to dismiss for want of jurisdiction any Commonwealth appeal for which we conclude the evidence suppressed is not "essential to the prosecution." Id. at 608-09, 478 S.E.2d at 719-20 (decided under a prior version of Code § 19.2-398, which included the language, "provided the Commonwealth certifies the evidence is essential to the prosecution"). Instead, we have held the prosecutor's certification pursuant to Code § 19.2-398 "is not reviewable on appeal." Id. at 609, 478 S.E.2d at 720. Similarly, here, we hold that the absence of that certification is not fatal to our acquisition of jurisdiction.

The Supreme Court "[has] repeatedly held," in both the civil and criminal context, "'that the use of "shall," in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent.'" Butler v. Commonwealth, 264 Va. 614, 619, 570 S.E.2d 813, 816 (2002) (quoting Jamborsky v. Baskins, 247 Va. 506, 511, 442 S.E.2d 636, 638 (1994)); see also Nelms v. Vaughan, 84 Va. 696, 699-700, 5 S.E. 704, 705-06 (1888). "'[A] statute may be mandatory in some respects, and directory in others.'" Ladd v. Lamb, 195 Va. 1031, 1035, 81 S.E.2d 756, 759 (1954) (quoting 82 C.J.S. Statutes § 374, at 868 (1953)).

- 3 -

Code § 19.2-400 contains both language that is mandatory and language that is directory. The statute contains mandatory language that "[n]o appeal shall be allowed . . . pursuant to . . . [§ 19.2-398(A)] *unless* within seven days after entry of the order . . . , the Commonwealth files a notice of appeal with the clerk of the trial court." Code § 19.2-400 (emphasis added); cf. Johnson v. Commonwealth, 1 Va. App. 510, 511-12, 339 S.E.2d 919, 920 (1986) (holding language in Rule 5A:6 providing, *inter alia*, that "No appeal shall be allowed unless, within 30 days after entry of final judgment . . . counsel files with the clerk of the trial court a notice of appeal," sets out a time limit that is jurisdictional); Riner v. Commonwealth, 40 Va. App. 440, 454, 579 S.E.2d 671, 678 (2003) (holding timely filing of petition for appeal and timely filing of notice of appeal under Rule 5A:3 are jurisdictional), aff'd on other grounds, 268 Va. 296, 601 S.E.2d 555 (2004). However, we hold the language in Code § 19.2-400 stating what the notice of appeal "shall" contain, along with almost identical language in § 19.2-398, is directory only. See Riner, 40 Va. App. at 454, 579 S.E.2d at 678 (holding that although timely filing of a petition for appeal under Rule 5A:3 is jurisdictional, "the provisions of Rule 5A:12(c) stating what the petition 'shall contain' . . . are not jurisdictional" and that the Court may consider "assignments of error added to the petition, with leave of court, at a later date"). Thus, the Commonwealth's failure to file the certification described in Code §§ 19.2-398 and -400 is not jurisdictional.[1]

---

[1] We conclude only that the timely filing of the certification is not jurisdictional. We need not decide whether the Commonwealth's failure to correct this deficiency after receiving notice of such failure might provide a non-jurisdictional basis for dismissal of an appeal because defendant has not moved for a dismissal on these grounds. Cf. Riner, 40 Va. App. at 454, 579 S.E.2d at 678 (in context of holding that Rule 5A:12's requirements for contents of petition for appeal are not jurisdictional, concluding that "'we do not minimize the necessity of adherence to the . . . Rule[s] by members of the bar'" and that "[a] petitioner who fails to include one or more issues in his petition for appeal and subsequently asks the Court for leave to enlarge the petition acts at his peril because the Court is not compelled to grant such leave" (quoting Johnson, 1 Va. App. at 513, 339 S.E.2d at 921)); United States v. Hatfield, 365 F.3d 332, 337-38 (4th Cir. 2004) (under federal statute containing similar certification language, holding that in the case of

Persuasive authority supports this result. In holding in <u>Thomas</u>, 23 Va. App. at 608-09, 478 S.E.2d at 720, that the Court was not permitted under an earlier version of Code § 19.2-398 to review the certification for accuracy, we concluded that in order to interpret the certification language, we may look to federal case law interpreting a similar federal statute. The corresponding federal statute, 18 U.S.C. § 3731, contains certification language very similar to that in Virginia's statutes, expressly authorizing an appeal "'of a district court order suppressing or excluding evidence . . . if the United States attorney certifies to the district court that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of a fact material to the proceeding.'" <u>United States v. Hatfield</u>, 365 F.3d 332, 337 (4th Cir. 2004). The United States Circuit Courts of Appeals, including our own Fourth Circuit, agree "that the certification requirement [in the federal statute] is not jurisdictional." <u>Id.</u>; see also <u>In re Grand Jury Subpoena</u>, 175 F.3d 332, 337 (4th Cir. 1999).

Accordingly, we proceed to address the merits of the appeal.

B.

MOTION TO SUPPRESS ON FOURTH AMENDMENT GROUNDS

In reviewing the trial court's ruling on a motion to suppress, "'"[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," [and] we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case.'" <u>Robinson v. Commonwealth</u>, 47 Va. App. 533, 544, 625 S.E.2d 651, 656 (2006) (en banc) (quoting <u>McCracken v. Commonwealth</u>, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc) (quoting <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc))), <u>aff'd</u>, 273 Va. 26, 44, 639 S.E.2d 217, 227 (2007); <u>see</u>

the delayed filing of a certificate, "an appellate court may, within its discretion, hear the case despite the irregularity" and setting out factors to be assessed in determining whether to grant the defendant's motion to dismiss the appeal based on the late filing).

Logan v. Commonwealth, 46 Va. App. 213, 219, 616 S.E.2d 744, 747 (2005) (holding ultimate conclusion regarding whether reasonable expectation of privacy exists is reviewed *de novo*).

At a hearing on a defendant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the defendant has the burden of proving he had a reasonable expectation of privacy in the place searched, Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (citing Rakas v. Illinois, 439 U.S. 128, 131 n.1, 99 S. Ct. 421, 424 n.1, 58 L.Ed.2d 387, 393 n.1 (1978)), and the Commonwealth has the burden of proving that the relevant search or seizure did not violate the defendant's Fourth Amendment rights, Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts," Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977), and the appellant bears the burden of showing that the trial court's ruling "'constituted reversible error,'" McGee, 25 Va. App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

"The United States Supreme Court long has held that 'the curtilage area immediately surrounding a private house' is 'a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept.'" Johnson v. Commonwealth, 26 Va. App. 674, 684, 496 S.E.2d 143, 148 (1998) (quoting Dow Chem. Co. v. United States, 476 U.S. 227, 235, 106 S. Ct. 1819, 1825, 90 L. Ed. 2d 226, 235 (1986)).

> "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." When government agents conduct a search or seizure within protected areas of a dwelling without a warrant such actions are presumptively unreasonable and unlawful unless they are supported by both probable cause and exigent circumstances.

Robinson, 273 Va. at 34, 639 S.E.2d at 221 (quoting United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326, 334 (1987)).  Because it is undisputed Detective Reed lacked probable cause to enter onto defendant's property prior to observing the hand-to-hand transaction, we must determine whether the evidence supported the trial court's ruling that the area Detective Reed entered was constitutionally protected as part of the home's curtilage.

The United States Supreme Court has held that contemporary

> curtilage questions should be resolved with particular reference to four factors:  the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Dunn, 480 U.S. at 301, 107 S. Ct. at 1139, 94 L. Ed. 2d at 334-35; see also Wellford v. Commonwealth, 227 Va. 297, 302-03, 315 S.E.2d 235, 238 (1984) (recognizing that "'the curtilage includes the cluster of buildings constituting the habitation or dwelling place, whether enclosed with an inner fence or not'" (quoting Bare v. Commonwealth, 122 Va. 783, 794, 94 S.E. 168, 172 (1917))).  We have recognized that "'[p]eople commonly have different expectations . . . for the access areas of their premises than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck.'"  Shaver v. Commonwealth, 30 Va. App. 789, 796, 520 S.E.2d 389, 397 (1999) (quoting State v. Corbett, 516 P.2d 487, 490 (Or. 1973)).  "[W]hether [the individual] 'could reasonably assert control or supervision over, or exclude others from access to, the place'" is also a relevant factor, Johnson, 26 Va. App. at 685, 496 S.E.2d at 148 (quoting United States v. Nuesca, 945 F.2d 254, 259 (9th Cir. 1991)), but the presence or absence of a property interest is not dispositive, Oliver v. United States, 466 U.S. 170, 183, 104 S. Ct. 1735, 1743-44, 80 L. Ed. 2d 214, 227 (1984); see Minnesota v. Carter, 525 U.S. 83, 89, 119 S. Ct. 469, 473, 142 L. Ed. 2d 373, 379-80 (1998) (recognizing overnight

houseguest may have legitimate expectation of privacy in the home of another).  The relevant decisions do "not suggest that combining these factors produces a finely tuned formula" but rather that "these factors are useful analytical tools" for analyzing "the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  Dunn, 480 U.S. at 301, 107 S. Ct. at 1139-40, 94 L. Ed. 2d at 335.

Here, the evidence supported the conclusions that the portions of defendant's backyard at issue were areas within the curtilage of the home in which he had a reasonable expectation of privacy at the time of the events at issue.  The evidence also supported the conclusion that Detective Reed was able to see the hand-to-hand transaction within the curtilage only because he himself intruded into the curtilage by climbing the fence and that the Commonwealth failed to prove Detective Reed's presence there did not violate defendant's Fourth Amendment rights.

Defendant's home was located at the end of a dead-end street.  Although the home was adjacent to the fairgrounds, an industrial park, and a church, it was separated from each of those properties by a fence.  The presence of the fence separating defendant's property from the property of the fairgrounds provided defendant with the reasonable expectation that the fence, whether or not it belonged to him, would exclude anyone on fairgrounds property from coming closer to his home than the fence would allow.  Further, although Detective Reed testified he did not know precisely where the property line lay between defendant's home and the adjacent fairgrounds, he also testified that the fence he climbed "runs . . . *right down the edge* of the Mayfield subdivision" and that, after he climbed the fence and walked along the fence line for an undisclosed distance, he was "*within six or seven feet of [defendant's] house,*" between the fence and the house.  (Emphases added).  It was from that location, six or seven feet from defendant's house, that Detective Reed was able to see defendant and the informant engage in the

- 8 -

hand-to-hand transaction "across the yard" "on the opposite side," about twenty-five feet away from Reed.

The evidence, viewed in the light most favorable to defendant, also supported the inference that the hand-to-hand transaction that occurred behind defendant's residence after 5:45 p.m. on February 8, 2007, was not visible from either the fairgrounds property at the side rear of the residence or the public street in front of the residence. No evidence established what type of fencing surrounded the fairgrounds or whether the area was lighted on the evening in question, and the trial court was entitled to draw the reasonable inference that if Detective Reed had been able to see defendant's backyard clearly from the fairgrounds property, he would not have needed to scale the fence and walk along the fence line for an undisclosed distance in order to conduct his surveillance. Also, although the evidence established two other detectives were involved in the surveillance and that all three proceeded to defendant's house when the informant did, no one other than Detective Reed testified that he or she was able to view the location in defendant's yard where the transaction took place from a vantage point other than the one Detective Reed occupied inside the curtilage.

Thus, the evidence, viewed in the light most favorable to defendant, supported the trial court's conclusion that the hand-to-hand transaction occurred within the curtilage of defendant's home and that Detective Reed, also inside the curtilage, was not in a place from which he could legitimately view that transaction for purposes of the Fourth Amendment. Compare Jefferson v. Commonwealth, 27 Va. App. 1, 17, 497 S.E.2d 474, 482 (1998) (concluding appellant had reasonable expectation of privacy in the place of his arrest because "the proximity of the place where [the officer] arrested appellant was extremely close to appellant's house and could not be viewed by pedestrians and drivers passing in front of the house"), with Robinson, 47 Va. App. at 549-53, 625 S.E.2d at 658-59 (holding appellants lacked reasonable expectation of privacy in

activity observed by police officers legitimately in their driveway and on their front walk because they had impliedly consented to having members of the public in these areas), and Shaver, 30 Va. App. at 793, 797, 520 S.E.2d at 395, 397 (holding appellant lacked an expectation of privacy in the stolen ATV located in a driveway that was wholly visible from the road and that the presence of officers in this publicly accessible part of the curtilage to view the stolen ATV more closely did not implicate the Fourth Amendment). Accordingly, the trial court's decision to grant the motion to suppress was not error.

II.

For these reasons, we hold the failure to make the certification required by the statute is not a jurisdictional defect and that the trial court's ruling suppressing the evidence was not error. Thus, we affirm the granting of the motion and remand for additional proceedings consistent with this opinion if the Commonwealth be so advised.

Affirmed and remanded.